UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL STEPHEN TROMBETTA,

      Plaintiff,

v.                                Case No:  2:17-cv-382-FtM-99CM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

### REPORT AND RECOMMENDATION[1]

*Pro se* Plaintiff Michael Stephen Trombetta seeks judicial review of the termination of his period of disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs (Docs. 21, 22)[2] and the applicable law. For the reasons discussed below, the Court respectfully recommends the decision of the Commissioner be affirmed.

---

[1] A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

[2] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## I.      Issue on Appeal[3]

Plaintiff appears to raise one issue on appeal: whether the Administrative Law Judge ("ALJ") improperly failed to fully develop the record.

## II.      Applicable Law and Background

In a case involving the termination of disability benefits, such as this case, the Commissioner may terminate an individual's disability benefits if there is substantial evidence there has been medical improvement in the individual's impairments related to his ability to work so the individual can now engage in substantial gainful activity.   42 U.S.C. § 423(f)(1); 20 C.F.R. § 404.1594(a).[4]   "[T]here can be no termination of benefits unless there is substantial evidence of improvement to the point of no disability."   *McAulay v. Heckler*, 749 F.2d 1500 (11th Cir. 1985) (citing *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982)).

In determining whether disability benefits should be terminated, the ALJ must follow an eight-step sequential process to decide (1) whether the individual is engaging in substantial gainful activity; (2) if not, whether the individual has an

---

[3] Any issue not raised by Plaintiff on appeal is deemed to be waived.   *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[4] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments, and including the regulations concerning the evaluation of medical improvement and continuing disability.   *See, e.g.*, 20 C.F.R. § 404.1594 (effective March 27, 2017); 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527 (effective March 27, 2017); SSR 16-3p.   The Court will apply the rules and regulations in effect at the time of the ALJ's decision.   *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

impairment or combination of impairments that meets or medically equals a listing; (3) if not, whether there has been medical improvement in the impairment; (4) if so, whether the improvement is related to the individual's ability to work; (5) if there is no medical improvement or if the improvement is not related to the individual's ability to work, whether an exception applies; (6) if there is medical improvement related to the ability to work or if an exception applies, whether the individual has a severe impairment; (7) if so, whether the individual can perform past relevant work; and (8) if not, whether the individual can perform other work. 20 C.F.R. § 404.1594(f).

On July 3, 2008, Plaintiff filed an application for DIB alleging his disability began on May 1, 2008. Tr. 180-88. In a decision dated August 15, 2008, the Commissioner found Plaintiff was disabled due to malignant neoplasm of the tongue. Tr. 73. At the time of the initial disability determination—also called the comparison point decision ("CPD")—the available medical evidence included reports from Brigham & Women's Hospital from 2008; an SSA-416 form[5] dated August 14, 2008; and reports from Charles M. Norris, Jr., M.D. at the Dana Farber Cancer Institute dated July 24 and 25, 2008. *See* Tr. 81, 84, 87. The administrative record contains only the reports from Brigham & Women's Hospital. *See* Tr. 406-15.

On January 8, 2013, upon periodic review of Plaintiff's file, the Commissioner determined that Plaintiff's disability ceased as his medical condition had improved to

---

[5] The SSA-416 form is a case analysis and medical evaluation completed by a State agency medical consultant to assist the Commissioner in determining whether a claimant is disabled. *See* Tr. 35, 335.

where he could return to work.   Tr. 74, 76-81.   As a result, Plaintiff's period of disability and disability benefits would terminate on March 31, 2013.   Tr. 74. Plaintiff requested reconsideration of the benefits termination and requested a hearing before a disability hearing officer.   Tr. 82.   On July 26, 2013, the hearing officer issued a decision without holding a hearing because Plaintiff "failed to cooperate during the disability review process."   *See* Tr. 75, 84-98.   In her decision, the hearing officer reviewed medical evidence from the CPD and more recent evidence, determining that Plaintiff's condition had improved since the CPD, and he was no longer disabled.   *See* Tr. 87.   Specifically, the hearing officer noted that at the CPD, Plaintiff had a diagnosis of invasive squamous cell carcinoma of the left lateral tongue, but a recent biopsy showed "no signs of malignancy," and the medical records showed Plaintiff was generally doing well as of January 2013.   Tr. 87-88. Thus, the hearing officer affirmed the termination of disability benefits.   *See* Tr. 75.

On September 27, 2013, Plaintiff requested a hearing before an ALJ.   Tr. 99. ALJ John R. Daughtry held a hearing on April 28, 2015, at which Plaintiff was represented by counsel.[6]   Tr. 44-72.   After the hearing, Plaintiff submitted certain additional medical records that the ALJ considered and made part of the record.   *See* Tr. 30.   On May 29, 2015 the ALJ issued a decision finding that Plaintiff's disability

---

[6] Plaintiff was represented by counsel at the hearing and through the date of the ALJ's decision but became unrepresented at some point after the decision.   *See* Tr. 30, 44-72, 283; Doc. 21.   On June 22, 2015, about one month after the ALJ issued his decision, Plaintiff sent a letter to the Appeals Council requesting an extension of time to "confer with current and future legal coun[sel] and perhaps to prepare case as sole representative[.]"   Tr. 283.   Thereafter, Plaintiff sent multiple additional letters to the Appeals Council personally and not through counsel.   *See* Tr. 284-85, 286-88, 436-39.

ceased as of March 31, 2013 and he was not disabled from that date through the date of the decision.   Tr. 30-37.   As an initial matter, the ALJ found that at the time of the CPD, Plaintiff had malignant neoplasm of the tongue, which met the listing in section 13.02 of 20 CFR Part 404, Subpart P, Appendix 1 ("Listing 13.02E") applying to soft tissue malignant tumors of the head and neck.[7]   Tr. 32.   At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity through March 31, 2013, the date the claimant's disability period terminated.   *Id.*   Next, at step two, the ALJ found Plaintiff had the following impairments as of March 31, 2013: "history of tongue cancer status post partial glossectomy and neck dissection[;]" residual jaw spasms; "TMJ[;]" chronic pharyngitis; mucous membrane dryness; and hypothyroidism.   *Id.*   The ALJ further found that since March 31, 2013, Plaintiff "did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1[.]"   *Id.*

At step three, the ALJ found that medical improvement of Plaintiff's condition occurred as of March 31, 2013.   *Id.*   At step four, the ALJ determined that the medical improvement was related to the ability to work because Plaintiff's impairment improved to where it no longer met Listing 13.02E.   *Id.*   Next, at step

---

[7] The Court cites to Listing 13.02 as it appeared on the date of the ALJ's decision of May 29, 2015.   The current version of Listing 13.02 is not substantively different from the prior version; the prior version, however, uses the term "[s]oft tissue tumors" (under the section for *malignant* neoplastic diseases) and the current version uses the term "[s]oft tissue cancers."   *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 13.02.   Both versions require the presence of a malignant, or cancerous, neoplasm in the head or neck.   *See id.*

six, the ALJ determined that from March 31, 2013 through the date of the decision, Plaintiff had a severe combination of impairments including each impairment identified at step two.   Tr. 33.   At step seven, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work[8] except:

> [Plaintiff] can frequently climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.   He can occasionally climb ladders, ropes, and scaffolds.   He can have occasional exposure to temperature extremes and workplace hazards such as unprotected heights or moving machinery.

*Id.*   Finally, at step eight, the ALJ found that beginning on March 31, 2013, Plaintiff has been able to perform past relevant work as a deliverer of merchandise and a supervisor of retail sales, and that in the alternative, there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 35-36.   Thus, the ALJ concluded Plaintiff's disability ceased on March 31, 2013, and Plaintiff was not disabled from that date through May 28, 2015, the date of the decision.   Tr. 36.   On September 27, 2016, the Appeals Council denied Plaintiff's request for review, and on July 10, 2017, Plaintiff filed a Complaint with this Court. Tr. 8-16; Doc. 1.   The ALJ's May 29, 2015 decision is the final decision of the Commissioner, and the decision is ripe for review.

---

[8] The regulations define medium work as work that involves:

lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.   If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c).

### III.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

"In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

IV.     Discussion

In his brief, Plaintiff discusses medical records and symptoms of his medical conditions and generally asserts that the ALJ improperly failed to consider the referenced medical records.   *See* Doc. 21 at 1-2.   The brief raises no other specific issue.   Plaintiff concludes his brief by requesting benefits from June 2015 to March 30, 2018.   *Id.* at 4.   Although Plaintiff is proceeding *pro se*, it is still Plaintiff's burden to provide evidence to support his claim.   *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).   Thus, it is not for the Court to undertake an open-ended review of the administrative record to formulate arguments on Plaintiff's behalf.   *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006).   Nonetheless, "*pro se* pleadings are . . . liberally construed[.]" *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

Construed liberally, Plaintiff's brief raises a single issue: whether the ALJ failed to fully develop the record.   Plaintiff primarily points to medical evidence missing from the record dated after the ALJ's decision, which is not relevant as explained below.   Upon review of the record, however, the Court notes that certain medical evidence relied upon in finding Plaintiff disabled at the CPD is missing from the record.   This missing evidence raises the issue whether the ALJ committed reversible error by failing to fully develop the record on the missing CPD medical evidence.

Plaintiff alleges that the record fails to include evidence of a CT scan on his neck from October 16, 2015, which Plaintiff states would show "musculoskeletal

degenerative changes in thoracic spine . . . left neck fistula, skin with acute inflammation, fibrosis and foreign body giant cell reaction[.]"   Doc. 21 at 2. Plaintiff also describes a December 23, 2015 surgery on his neck, which "resulted in constant neck pain and tightness limiting mobility[.]"   *Id.*   Plaintiff continues that his conditions make it "impossible" for him to exert himself and lists medical issues caused by his radiation therapy.   *Id.* at 3.   Finally, Plaintiff includes a list of medical records he could produce "if requested" and asserts that he is unemployed; has a severe impairment; cannot perform his past work; and cannot perform work in the national economy.   *Id.*

The Commissioner responds that substantial evidence supports the ALJ's decision, and Plaintiff waived any issues he asserts as error because he failed to clearly raise any issues in his brief.   Doc. 22 at 1-4.   Without conceding Plaintiff properly raised the issue, the Commissioner argues that all Plaintiff's contentions regarding the evidence in the record are based on medical evidence dated after the ALJ's decision and not previously submitted at the administrative level, noting that Plaintiff did not actually submit any additional evidence to the Court.   *Id.* at 10-11. The Commissioner concedes, however, that the record is incomplete and does not contain all the evidence from the favorable CPD in 2008 and suggests the ALJ may have erred in failing to compare evidence that supported the CPD with current medical evidence showing improvement.   *Id.* at 8 n.3.   The Commissioner argues, however, this was harmless error because Plaintiff admitted he no longer met Listing 13.02E, the medical evidence showing that Plaintiff was cancer-free in December

2012 demonstrates he could no longer meet the Listing, and Plaintiff's condition medically improved. *Id.*

It is well established that "[t]he ALJ has a basic duty to develop a full and fair record." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam)); *Ellison*, 355 F.3d at 1276; *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997) (stating that the ALJ has an affirmative duty to develop the record fully and fairly). The United States Supreme Court has held that "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000); *see also Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) ("the SSA generally takes upon itself the responsibility of identifying information in its records relevant to the resolution of a party's claim . . . [t]hus, in numerous and varied ways, the SSA's adjudicatory scheme exudes the air of an inquisitorial process."). "This obligation exists even if the claimant is represented by counsel, or has waived the right to representation." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979) and *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. 1981)).

Thus, an ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Cowart*, 662 F.2d at 735 (internal quotation marks omitted). Further, in a disability termination case, "there can be no termination of benefits unless there is substantial evidence of improvement to the

point of no disability." *McAulay*, 749 F.2d at 1500 (citing *Simpson*, 691 F.2d at 969). To make the required finding of improvement, "a comparison of the *original medical evidence* and the new medical evidence is necessary to make a finding of improvement." *Id.* (emphasis added) (citing *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984)).

As an initial matter, the Court recommends Plaintiff's argument as to medical evidence post-dating the ALJ's decision is unavailing. The medical evidence that Plaintiff asserts should be included in the record—an October 16, 2015 CT scan of his neck[9]—post-dates the ALJ's decision. Doc. 21 at 2. Further, Plaintiff references medical issues he is now experiencing (apparently as of March 30, 2018, the date he filed the brief) because of the December 2015 (post-decision) surgery and effects of radiation treatment. *Id.* at 2-3. "If a claimant becomes disabled after he has lost [DIB] insured status, his claim must be denied despite his disability." *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).[10] The ALJ's duty to fully develop the record does does not extend to post-decision medical evidence not chronologically relevant to the period of disability at issue. *See Wilson*, 179 F.3d at 1279.[11] Here,

---

[9] Plaintiff discusses other medical records related to symptoms of his conditions and corrective procedures, including a December 23, 2015 neck surgery, but the only evidence he argues was improperly excluded from the record is the October 16, 2015 CT scan. *See* Doc. 21 at 2-3.

[10] The Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[11] As the Eleventh Circuit noted in *Wilson*, if a claimant's medical condition worsens after an ALJ's decision as evidenced by new medical records, the claimant can file a new benefits application. *See* 179 F.3d at 1279 n.5.

the ALJ considered the additional medical evidence Plaintiff submitted after the hearing.  Tr. 30 (citing Tr. 403-435).  Plaintiff, however, submitted none of the medical evidence he references in his brief at the administrative level to the ALJ or the Appeals Council.[12]  *See* Doc. 21 at 3.  He also submitted none of the evidence to this Court, and thus the Court is unable to consider it.

As the Commissioner concedes, however, the record is missing some of the medical evidence relied upon at the CPD to determine Plaintiff was disabled.  *See* Doc. 22 at 8 n.3; Tr. 81, 84, 289-439.  The medical evidence relied on at the CPD consisted of records from Brigham and Women's Hospital from 2008; reports from Dr. Norris at the Dana Farber Cancer Institute from July 24 and 25, 2008; and the SSA-416 form dated August 14, 2008.  *See* Tr. 81, 84.  Of these, the record contains a discharge summary and treatment notes from Brigham and Women's Hospital dated from June to September 2008 but does not contain the July 2008 treatment notes from Dr. Norris or the SSA-416 form.  *See* Tr. 406-15.  Due to the incomplete record, the ALJ could not have actually compared all the prior medical evidence with the new medical evidence in determining medical improvement.  *See* 20 C.F.R. § 404.1594(b)(1); *Vaughn*, 727 F.2d at 1043.  Thus, the Court recommends the ALJ

---

[12]  Plaintiff did not raise any issue related to the Appeals Council and thus has waived any potential issue.  *See Access Now*, 385 F.3d at 1330.  Even if he did not waive the issue, however, the Court would recommend the Appeals Council committed no reversible error.  After the hearing, Plaintiff sent four letters to the Appeals Council that referenced his conditions but did not include any medical evidence.  *See* Tr. 12-13 (citing Tr. 283-88, 436-39).  The Appeals Council made the letters part of the record and considered them in denying Plaintiff's request for review, and thus did not fail or refuse to consider anything that Plaintiff "properly present[ed]."  *See id.*; *Ingram*, 496 F.3d at 1260.  Further, none of the referenced but not submitted records relate to the period on or before the date of the ALJ's decision and are not chronologically relevant.  *See* Tr. 283-88, 436-39; 20 C.F.R. § 404.970(b).

failed to fully develop the record by failing to obtain all the prior medical evidence used to initially determine Plaintiff was disabled.   The Court further recommends, however, that this error was harmless because the record contained sufficient medical evidence from the CPD for the ALJ to make the required comparison under the regulations.

The Eleventh Circuit has held that "[i]n evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown*, 44 F.3d at 935 (quoting *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (internal citation and quotation marks omitted)). The regulations require that the ALJ actually compare the "prior and current medical evidence"—or evidence used to previously determine disability and evidence used to evaluate possible improvement.   20 C.F.R. § 404.1594(c)(1); *Lawrence v. Heckler*, 739 F.2d 567, 568 (11th Cir. 1984); *Vaughn*, 727 F.2d at 1043.   It is not clear, however, that the regulations require that the ALJ evaluate and compare every item of medical evidence available at the time of the CPD.

Here, despite the lack of some evidence used at the CPD, the record contains other medical evidence from the CPD, namely, the discharge summary and treatment notes from Brigham and Women's Hospital, and the ALJ noted that the records documented Plaintiff's cancer diagnosis (which initially established his disability), surgery and treatment.   Tr. 34; *see* Tr. 406-15.   The record also contains two SSA analysis forms comparing the signs, symptoms and laboratory findings present at the time of the CPD with the signs, symptoms, and laboratory findings present as of

December 18, 2012 and April 5, 2013, showing that Plaintiff had T3 N0 squamous cell carcinoma of the left mobile tongue at CPD but was cancer-free in 2012 and 2013. Tr. 214-15, 231-32.

Further, although the ALJ did not discuss and compare each item of medical evidence used at the CPD (as the record did not contain each item), he discussed the records from Brigham and Women's Hospital and noted that they reflected Plaintiff's diagnosis and surgery for his tongue cancer, the condition that rendered him disabled. *See* Tr. 34; 406-15.   The ALJ then extensively discussed the current medical evidence and noted that the evidence showed Plaintiff was cancer-free and generally improving.   *See* Tr. 34-35.   In other words, the ALJ actually compared prior and current medical evidence at least to the extent of acknowledging that prior evidence showed active cancer and current evidence showed no cancer.   *See id.*

Thus, the Court can make the "specific and legitimate inference[]" that the ALJ compared the available medical evidence in the record from the CPD to the current medical evidence despite the lack of an explicit item-by-item comparison in the ALJ's decision.   *See Attmore v. Colvin*, 827 F.3d 872, 877 (9th Cir. 2016) (citation omitted). This distinguishes Plaintiff's case from prior Eleventh Circuit decisions reversing ALJ decisions based on failure to compare current and prior medical evidence where the ALJ failed to discuss prior medical evidence at all and focused exclusively on current medical evidence.   *See Vaughn*, 727 F.2d at 1043 ("In the proceeding below, the ALJ focused only on current evidence of whether [the plaintiff] was disabled"); *Lawrence*, 739 F.2d at 568 ("The ALJ in this case considered only the current medical

evidence of [the plaintiff's] disability"); *Klaes v. Comm'r, Soc. Sec. Admin.*, 499 F. App'x 895, 896-97 (11th Cir. 2012) ("The ALJ did not mention, much less compare, the medical evidence of [the plaintiff's] impairments . . . that was relied upon to make the original . . . disability determination").[13]   Thus, the Court recommends the ALJ's failure to fully develop the record was harmless error.

## V.      Conclusion

Accordingly, the undersigned recommends that the ALJ applied the proper legal standards, and substantial evidence supported the ALJ's determination that Plaintiff's disability ceased.

ACCORDINGLY, it is respectfully

**RECOMMENDED:**

1.      The decision of the Commissioner be **AFFIRMED.**

2.      The Clerk be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

---

[13] Plaintiff's case is also unique in that Plaintiff admitted that although he met Listing 13.02E at the CPD, he did not meet the listing at the time of the ALJ's decision.   *See* Doc. 22 at 8 n.3; Tr. 70, 281.   Under the regulations, the change in the severity of Plaintiff's impairment from active cancer status in 2008 to cancer-free in 2012 and 2013 is sufficient to show medical improvement and that the medical improvement was related to Plaintiff's ability to work.   *See* 20 C.F.R. § 404.1594(b)(1) ("Medical improvement is *any* decrease in the medical severity of your impairment(s)") (emphasis added); 20 C.F.R. § 404.1594(c)(3)(i) ("If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work").

**DONE** and **ENTERED** in Fort Myers, Florida on this 20th day of December, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record
*Pro se* parties